**Earlene OLINGHOUSE, Appellant,**

v.

**Kenda Karlene OLINGHOUSE, Appellee.**

**No. 83226.**

Court of Appeals of Oklahoma,
Division No. 3.

Aug. 1, 1995.

Certiorari Denied Nov. 16, 1995.

Katherine Hine, Muskogee, for Appellant.

Monte W. Strout, Tahlequah, for Appellee.

### OPINION

HUNTER, Presiding Judge:

Appellant, Earlene Olinghouse, "Aunt", seeks review of the trial court's order which awarded custody of her nephew, C.O., to his natural mother, Appellee, Kenda Olinghouse (Mother). This custody dispute arises from the execution of a "Relinquishment of Care, Custody and Control of Minor Child" which was executed by Mother and her husband, the father of C.O., on January 29, 1990. C.O. was born on May 6, 1988, with severe medical problems, including hemophilia. A chronology of events is necessary to understand the posture of this case.

After C.O. was born, Mother and then husband/father Terry Olinghouse, executed a one-sentence Relinquishment of C.O.'s custody to Aunt. The document provides:

Comes now Terry Lee Olinghouse and Kenda Karlene Olinghouse, the natural parents of [C.L.O.] whose date of birth is May 6, 1988, and said parents hereby relinquish care and custody of the said [C.L.O.] to Earlene Olinghouse, paternal aunt of the said child, all for the best interests of said child.

The Relinquishment was signed by Mother and the father and acknowledged by a judge of the district court of Adair County, Oklahoma. The judge's acknowledgment provides:

Before me personally appeared Terry Lee Olinghouse and Kenda Karlene Olinghouse, natural parents of [C.L.O.], this 29th day of January, 1990, and they acknowledged to me that they executed the foregoing Relinquishment of Care and Custody of Child and that the same was their free and voluntary act and deed for the reasons and purposes set forth herein.

This document was filed with the district court clerk on January 30, 1990, and assigned the case number P–90–9. It is uncontroverted no hearings were held, and thus no record was made, regarding the relinquishment. The relinquishment did not accompany any other application for guardianship, and no proceedings under Title 10 of the Oklahoma Statutes, including that to terminate parental rights, had been instituted. The only other item filed in case number P–90–9 was an Order approving the contingent fee amount of an attorney/client agreement between Aunt and a law office, for C.O.'s personal injury claims.

On June 13, 1991, Mother filed a motion to vacate the relinquishment. In her motion, she alleged she was "coerced into signing said order under the belief that if she did not so sign, medical attention would not be rendered her minor child". She also alleged she is full-blood Indian and under the federal and state Indian Child Welfare Acts, 12 U.S.C. § 1901 et seq. and 10 O.S. § 40, et seq., she is the only party to whom the minor child may be vested, absent the tribe of which she is a member. She prayed the court to set aside the void relinquishment and order the Aunt to deliver the child to her in lieu of an order of habeas corpus. Aunt responded the relinquishment was in accordance with 10 O.S.1991, § 25 et seq. and that Mother was required to proceed to gain custody of her child via 10 O.S.1991, § 31.

After a hearing on September 19, 1991, the trial court issued its "Order Vacating Purported Relinquishment of Custody", (filed November 1, 1991), because "the purported relinquishment standing alone, not filed in support of any petition seeking guardianship,

any relief under Title 10 of the Oklahoma Statutes, or any termination or modification of parental rights" did not culminate in a proper order of the court relinquishing care and custody of C.O. to Aunt or any other party. The trial court further found that the physical possession of the child by the Aunt was "voluntary and for the convenience of the parties and that her possession of said minor child was with the permission of the parent". The trial court found the child has extensive and serious medical problems and that Aunt was schooled and skilled in the care of C.O. A hearing was set to determine "when, in the best interest of the child, the natural parent may take care, custody and control of said minor child, in whole or in part, due to the medical circumstances." The evidentiary hearing was subsequently deferred in another order until such time as the natural parent, Mother, had received medical training so that she could attend to the daily needs of C.O. This medical training was required, the court stated, "in light of this Court's responsibility to effectuate a proper order with respect to custody".

■ The Oklahoma Supreme Court denied Aunt's Application to Assume Original Jurisdiction and Petition for Writ of Mandamus or Prohibition.[1] After a subsequent trial court hearing on May 3, 1993, (order filed February 28, 1994), the trial court reaffirmed its prior determination that the relinquishment was improper and awarded the care, custody, and control of C.O. to Mother. Actual delivery of C.O. to Mother was stayed until C.O.'s medical condition stabilized. On February 7, 1994, (filed February 28, 1994) the trial court issued an order modifying the May judgment by staying the delivery of C.O. to Mother for 45 days from February 28, 1994, appointed counsel for C.O., and established visitation. From this order, Aunt appeals.[2]

■ The first preliminary issue to decide is the dismissal motion of Mother. She claims the November 1, 1991, judgment was the final, appealable order in this action and this appeal, lodged March 10, 1994, is untimely. Rule 1.11 of the Rules of Appellate Procedure in Civil Cases requires appeals to be commenced by filing a petition in error within 30 days of the date of judgment (including final orders or decrees). A judgment is the final determination of the rights of the parties in an action. 12 O.S.1991, § 681. A final order is one "affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment." *Jones v. Tubbs*, 860 P.2d 234, 235 (Okla.1993); 12 O.S.1991, § 953.[3]

■ The November 1, 1991, order was neither a final order nor a judgment. Although it vacated the relinquishment, it did not determine *who* was entitled to the custody of C.O. The validity of the relinquishment and the right to the custody of the minor child in possession of Aunt are two separate issues and the order clearly shows the custody of C.O. was not settled. The November 1, 1991, order requires another evidentiary hearing to determine when, in the best interests of the child, the natural parent may take care, custody and control of C.O. "in whole or in part". By using the words "in whole or in part", any rights to custody which Mother may have, clearly remained undetermined. In addition, the trial court's order filed *the same day as the order vacating the relinquishment,* refers to Mother's potential custody of C.O. as "in whole or in part" and defers further proceedings for a determination of what was in C.O.'s best interests, until after Mother had completed medical training. It was not until the February 28, 1994, order that the court "hereby awards" custody to Mother. The November 1, 1991, order was not a final order or judgment and this appeal is timely. Mother's motion to dismiss is denied.

---

**1.** The Application was denied in Case No. 78,-781, on February 25, 1992.

**2.** Appellant briefed only four of the five issues she raised in her petition in error. Issues not briefed are considered waived. *Peters v. Golden Oil Company*, 600 P.2d 330 (Okl.1979).

**3.** 12 O.S.1991, § 953 provides: An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment, is a final order, which may be vacated, modified or reversed, as provided in this article.

On appeal, Aunt contends the trial court erred in vacating the relinquishment because the relinquishment met the requirements of 10 O.S.1991, § 25 et seq. and further, that the trial court erred in placing the burden on proof to vacate the relinquishment on Aunt.

10 O.S.1991, § 26 (emphasis added) provides:

No person, *other than the parents, or relative within the fourth degree*, of the child concerned, may assume the *permanent* care and custody of a child except in accordance with the provisions of this Act, or in accordance with the decree of a court of competent jurisdiction.

10 O.S.1991, § 27 (emphasis added) provides:

No person may assign, relinquish, or otherwise transfer to another his rights or duties with respect to the *permanent* care or custody of a child, *except to the parents, or to the relatives within the fourth degree*, of the child concerned, unless specifically authorized or required so to do by an order or judgment of a court of competent jurisdiction or unless by a relinquishment executed in writing in accordance with the provisions of this act or of Section 47 of Title 44 of the Oklahoma Statutes.

■ Aunt is C.O.'s father's sister and uncontrovertedly, a relative within the fourth degree. According to the plain language of the statutes above-quoted, Mother's relinquishment of C.O.'s custody to Aunt, whether permanent or temporary, need not have complied with the statutory provisions regarding permanent relinquishment to persons other than relatives within the fourth degree, to be effective. Thus, Aunt's contention the only way Mother could regain custody of C.O. is through 10 O.S.1991, § 31, is erroneous.[4]

■ Supervision of the courts of this state over the custody and welfare of children is equitable. *Green v. Green*, 309 P.2d 276 (Okla.1957). While an appellate court may examine and weigh the evidence, the findings and decree of the trial court cannot be disturbed unless found to be against the clear weight of the evidence. *Mueggenborg v. Walling*, 836 P.2d 112 (Okla.1992). The best interests of the child is the paramount consideration of the trial court. *Id.;* 10 O.S. 1991, § 21.1.[5]

■ The one-sentence relinquishment, signed only by the parents of C.O., is at most evidence of an agreement between C.O.'s parents and a third person, regarding the care and custody of C.O. Generally, agreements between parents and between parents and third parties regarding child custody are not binding on the courts.[6] Children are not legally subject to barter or sale or gift in this state and so whether the arrangement for custody of C.O. was for either temporary or permanent custody, is irrelevant. *Taylor v. Taylor*, 75 P.2d 1132 (Okla.1938).[7]

---

**4.** 10 O.S.1991, § 31 provides: A child whose care and custody has been surrendered by a written relinquishment under this Act may not be recovered by the parents or other person who executed the relinquishment, except through order of a court of competent jurisdiction, based on a finding, supported by proof, that the child is neglected by its foster parents, guardian, or custodian, within the meaning of neglect, as defined by the statutes relating to neglected children.

**5.** 10 O.S.1991, § 21.1 provides in part:
A. Custody should be awarded or a guardian appointed in the following order of preference according to *the best interests of the child* to:
 1. a parent or to both parents jointly except as otherwise provided in subsection B of this section;
 \* \* \* \* \* \*
 4. a relative of either parent;
 \* \* \* \* \* \*

**6.** See *Solomon v. Solomon*, 5 Ariz.App. 352, 427 P.2d 156 (1967); *Commonwealth ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 66 A.2d 300 (1949); *Commonwealth ex rel. Berg v. Catholic Bureau*, 76 A.2d 427 (Penn.1950).

**7.** In *Taylor*, the father of a child brought a habeas corpus action to recover custody of the son from the widow of his brother. The Oklahoma Supreme Court affirmed the trial court's judgment which left custody of the child with the child's aunt.

A child is not a chattel and therefore cannot be made the subject of a contract by a parent, with the same force and effect as a gift or conveyance, or grant of property, irrevocably or otherwise; the relationship of parent and child is a status and not a property right; the doctrine of the integrity of written instruments has no materiality and since the welfare of the child is the determining factor, the court in the exercise of its equitable powers may ignore a bargain previously made by a parent in parting with a child; regardless of any gift or contract the court at any time has the power to make such disposition of a minor child, as the circumstances of the case demand, having always in view the best interest of the child.

*Commonwealth ex rel. Berg v. Catholic Bureau,* 167 Pa.Super. 514 76 A.2d 427 (1950), citing *Commonwealth ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 66 A.2d 300 (1949). Accordingly, the relinquishment, although valid, did not irrevocably place custody of C.O. in Aunt nor did it terminate Mother's parental rights.

In *Osburn v. Roberts,* 197 Okla. 206, 169 P.2d 293 (Okla.1946), the Supreme Court of Oklahoma set forth certain rules which should be considered in custody cases of this nature. In *Osburn,* a father sought a writ of habeas corpus to recover custody of his child from his sister. The father had placed custody of the child with the sister at birth. The trial court's judgment which determined it was in the child's best interest to stay with the aunt, was affirmed. The Court held:

In deciding cases of this nature, there are certain rules of law, urged by the parties, that should be kept in mind:

(a) Since the trial judge has a better opportunity to observe the parties and witnesses, he is in a better position to know what is best for the child than is this court from a review of the record, and his finding will not be disturbed unless it is clearly against the weight of the evidence or is contrary to law;

(b) there are three rights or interests that are to be given consideration in the following order of importance (1) that of the child, (2) that of the parent, and (3) that of those who have for years discharged all the obligations of parents;

(c) when asked to take the custody from those who have for a considerable period of time nurtured and cared for the child and to restore it to the parent, it is proper for the courts to consider the ties of love and confidence that have grown up between the child and its foster parents and whether it is best for the child not to disturb that relationship;

(d) children are not, like chattels, subject to an irrevocable gift, barter or sale, though the fact that a parent has relinquished custody of his child to others should be given due consideration;

(e) *unless the welfare of the child requires it, a parent will not ordinarily be denied its custody unless the parent is shown to be unfit to have its custody;*

(f) each such case must be determined upon its own peculiar facts and circumstances.

*Osburn,* 169 P.2d at 294.

■■■■ "The right of a parent to the custody of a minor child is of great importance in awarding its custody, but it is not an absolute right, and is qualified by considerations affecting the welfare of the child." *Sims v. Sims,* 350 P.2d 493, 495 (Okla.1960).[8] In *Haralson v. Haralson,* 595 P.2d 443 (Okla. 1979), a father sought custody of his children from his divorced wife pursuant to a motion to modify. The parties stipulated that at all times since the divorce, the children had been in the care of the maternal grandparents. The Court stated the burden the father had to regain custody of his children:

This Court has repeatedly held that to deprive a parent of the custody of his children in favor of a third person, *the parent must be affirmatively, not comparatively, shown to be unfit.* The mere fact that a child might be better cared for by a

8. In *Sims,* a father sought, through habeas corpus, to recover custody of his child from the paternal grandparents who had cared for the child since her birth until the age of 14. The Supreme Court affirmed the trial court's determination custody of the child should remain with the grandparents.

third person is not sufficient to justify taking a child from its parent. *In order for third persons to deprive a parent of custody of his children, some inability on the part of the parent to provide for the child's ordinary comfort, intellectual or moral development must be shown. Evidence of unfitness must be clear and conclusive and the necessity for depriving the parent of custody must be shown to be imperative.* In a divorce case, the district court may award custody to a third person if both parents are found to be unfit. *If a parent is not found to be unfit, is able to care for his children and desires to do so, he is entitled to custody as against others who have no permanent or legal right to custody.*

*Haralson,* at 445 (footnotes omitted; emphasis added). See also *McDonald v. Wrigley,* 870 P.2d 777 (Okla.1994). Thus, the burden is on the third party to show the parent is affirmatively unfit.

 In *Carter v. Carter,* 653 P.2d 207 (Okla.1982), the Supreme Court affirmed the trial court's order which placed custody of children in the mother, despite the mother's temporary conditional relinquishment of custody to the father of the children. (The mother had been awarded custody of the children in a divorce.) The rule with regard to temporary conditional relinquishment is that:

... as a matter of public policy, a parent who, in the best interest of the child, relinquishes custody in good faith because he/she is temporarily unable to provide for the child should be able to regain custody *by proving that the condition which required relinquishment has been resolved.* A parent who is unable to care for his/her

children should be encouraged to relinquish custody if he/she is unable to adequately provide for the child. A mother/father would be most reluctant to give up his/her child if he/she knew that custody could not be regained.

An exception to the rule may be applied if interim custody results in the child becoming totally integrated into the home of the parent with temporary custody. Integration may arise either because of the nature or duration of the provisional custodial arrangement. Determinative factors are: the duration of the temporary custody; the inclination of the parties as to the permanency of the custody; and the age of the child. Custodial environment of the child is established if over an appreciable time the child naturally looks to the custodian for guidance, necessities of life, and parental comfort.

*Carter,* at 208–209.

 We hold the authority quoted above is applicable to the case at hand and that the trial court did not err in placing the burden of proof *on Aunt* to show that Mother is unfit or that it is in C.O.'s best interests to remain with Aunt.[9] Mother was not required to prove "neglect" by Aunt under 10 O.S.1991, § 31 in order to regain custody of her child.

 The last issue raised on appeal is whether the trial court's judgment is supported by the evidence. Although Aunt refers to deposition testimony and testimony of health providers which she maintains the trial court considered in a January, 1993, hearing, there is no transcript of the hearing in January.[10] Although Aunt designated all transcripts, the record shows certain tran-

---

9. Aunt's contention the trial court abused its discretion in deferring the custody hearing on the best interest of C.O., after finding the relinquishment invalid, is without merit. In its November 1, 1991, order, the trial court deferred further evidentiary hearings and ordered medical training by Mother. The Court found that the minor child had been extensively treated, hospitalized as an in-patient and monitored continuously by an Arkansas hospital. The trial court found Aunt had received training at this facility which gave her the knowledge and skills to provide medication and other emergency treatment to C.O. The trial court ordered Mother to re-

ceive training to satisfy the court that Mother could attend to the daily needs of C.O. Aunt has failed to demonstrate the trial court abused its discretion in affording Mother the opportunity to gain the training necessary to care for C.O. or to remediate the conditions which may have necessitated the relinquishment of C.O. in the first place.

10. In the May, 1993, hearing, the trial court refers to a January hearing where it had taken the case under advisement.

scripts were not included because they were not paid for. In response to the Supreme Court's permission to amend her designation to delete transcripts, Aunt filed her "Notice of Statement of Material Facts Not Proved".[11] Aunt did not file an amended designation, nor did Mother counter-designate any transcripts. In her brief, *Aunt admits she did not designate that part of the record which deals with the testimony concerning Mother's medical training* but insists her "Notice of Statement of Material Facts Not Proved" proves the "severe inadequacies" of Mother's medical training. Within 10 days after this Statement was filed, Mother motioned the Supreme Court to strike the Statement. The Supreme Court denied this motion on September 28, 1994, and authorized Mother to counter-designate transcripts, which she did not do.

Aunt originally designated all transcripts, then mid-appeal, decided to proceed under Rule 1.21 to force Mother to designate the relevant transcripts. However, upon Mother's failure to designate them, Aunt failed to move in this Court for summary reversal of the trial court's decision as provided in Rule 1.21. Accordingly, this part of her appeal which challenges the judgment for insufficient evidence, stands submitted before this court without a transcript of the hearing where the evidence was purportedly admitted.[12,13]

"Legal error may not be presumed from a silent record; it must be affirmatively demonstrated. On review, we always indulge in the presumption that a trial court's decision is correct; every fact not disputed by the record must be regarded as supporting the trial court's judgment." *First Federal Savings and Loan Association, Chickasha, Oklahoma v. Nath*, 839 P.2d 1336 (Okla.1992). Appellant, Aunt, has not met her burden to provide for this Court's review, a record which overcomes the presumption of correctness of the trial court's decision. Her contention the trial court's decision to award custody of C.O. is not supported by the evidence, is without merit. Having determined the trial court's judgment is correct, we need not address Mother's contention the relinquishment was void for failure to comply with the Indian Child Welfare Acts. Accordingly, the trial court's judgment which awards custody of C.O. to Appellee, Kenda Olinghouse, is

AFFIRMED.

11. Rule 1.21 of the Rules of Appellate Procedure in Civil Cases, 12 O.S., Ch. 15, App. 2, provides:
 If the party taking an appeal asserts as a ground for reversal that the evidence is insufficient to support the verdict or judgment, he need not designate for transcription any of the evidence in the case, but instead he may serve on the adverse party a statement specifying the material facts which he alleges were not proved. Within ten days after the receipt of such statement the opposite party shall file in the trial court, mail to the other parties in the case (or their counsel) and give to the court reporter a statement designating for transcription so much of the evidence as he relies upon to establish proof of the specified facts, at the cost of the appellant. If more evidence than necessary is designated for transcription, the trial court shall order the designated portions abbreviated or direct that the excess be transcribed at the cost of the designating party. The provisions of Rule 1.20(c), (d) and (e) shall apply to transcripts sought to be procured under this Rule. On failure of a party who did not appeal to designate for transcription, within the time limit provided herein, the evidence relied upon to establish the specified facts, appellant may move in this court for summary reversal of the decision sought to be reviewed.

12. Although the Docket Sheet indicates certain depositions were filed with the court clerk in December, 1992, there is nothing to indicate the trial court considered these depositions in either January, 1993, or in May, 1993. Even if we presume the trial court considered the depositions, Aunt has failed to show the trial court's decision is clearly against the weight of the evidence.

13. Although Mother maintains a letter dated August 7, 1992, from two individuals with Kimberly Quality Care, demonstrates Mother is capable of caring for C.O., this document cannot properly be considered by us as evidence sustaining the trial court's decision. This letter only appears in the appellate record as an exhibit to Mother's objection to Aunt's application for a stay pending appeal, which was denied without prejudice by the Supreme Court. There is nothing in the record to demonstrate this letter was ever considered by the trial court. Parties may not supplement the record on appeal by injecting into it the material that was not before the trial court at the decisional stage of the case. *Dyke v. Saint Francis Hospital, Inc.*, 861 P.2d 295, 299–300 (Okl.1993).

HANSEN, J., concurs.

ADAMS, J., concurs in result.