960 P.2d 357 (1998)
1998 OK 38
In the Matter of the GUARDIANSHIP OF M.R.S., a minor child,
David L. SCHNEIDER, natural father, Appellant,
v.
Roy and Kay NAVEJAR, Guardians, Appellees.
No. 87619.
Supreme Court of Oklahoma.
May 12, 1998.
Rehearing Denied June 15, 1998.
Sharon Womack Doty, Tulsa, for Appellant, David L. Schneider.
Lillian M. Hamor, Tulsa, for Appellees, Roy and Kay Navejar.
Stanford C. Lane, Lisa R. Frazier, Tulsa, for Minor Child.
*358 HARGRAVE, Justice.
¶ 1 The issue before us is the standard of proof required in a proceeding to terminate the guardianship of a minor under 30 O.S. 1991 § 4-804. The natural father of a six-year-old daughter sought to terminate her guardianship for the reason that the guardianship was no longer necessary. The trial judge denied the application, finding that the father had failed to prove substantial and material change of condition, and that therefore it was in the child's best interests to remain with the guardians.
¶ 2 M.R.S. is the daughter of David and Brenda Schneider. Shortly after M.'s birth, Brenda Schneider abandoned David and M. David obtained a divorce from Brenda and was awarded custody of M. The guardians, Roy and Kay Navejar, are not related to M.[1] David's father and step-mother and the Navejars helped care for M. after her mother left. M. has lived with the Navejars for most of that time. The Navejars were appointed guardians of M. in 1993, after six days of testimony which resulted in an agreement between the parties that was approved by the court.[2]
¶ 3 David Schneider testified that he agreed to the guardianship because at that time he was single and was on call 24-hours per day, seven days a week, with his job and was therefore unable to care for M. David *359 Schneider was given liberal visitation and was directed to pay child support and medical expenses. The order appointing guardians specifically stated that none of the parties was found unfit to care for M., and that it was in her best interests for the Navejars to be appointed guardians.
¶ 4 David Schneider moved to terminate the guardianship proceeding in 1995, when M. was six years old, based upon changes in his circumstances that would permit him to care for her full-time. David Schneider testified that he has remarried and that his wife is expecting a baby. He stated that they will move into a three bedroom home that they own and will rent their present home for additional income. David Schneider testified that he has maintained a relationship with M. through his visitation with her on Thursday nights and on alternate weekends, and that he has continued his relationship with her and wants to provide a home for her. David Schneider testified that he now works regular hours, 7 a.m. to 7 p.m. five days a week and is off on weekends. He testified that he had spent all of his court-allowed visitation time with M., missing some of the Thursday night visits only when he was unable to get off work. Lisa Schneider, David's wife, testified that she gets along very well with M., is anxious to welcome her into the family and to make a home for her. Lisa Schneider is a housewife who stays home full time. She testified that she had developed a good relationship with M.
¶ 5 The trial judge conducted the hearing to terminate the guardianship as if it were a change of custody matter in a divorce action and placed on the father the burden of showing by clear and convincing evidence a substantial and material change in circumstances and that the best interests of the child would be served by terminating the guardianship, even though the father never had been found unfit. In effect, the trial court required the father to prove by clear and convincing evidence that he could provide a better home for M. than could the Navejars. The trial court held that the best-interests-of-the-child test controlled and that there was overwhelming proof that it would be in M.'s best interests to remain with the Navejars. The trial judge denied the application to terminate the guardianship.
¶ 6 The father appealed, arguing that the trial court erred by placing on him a burden of proof that applies only in post-decree custody contest between a child's natural parents. David Schneider argues that because he never has been found to be unfit, an impermissible burden of proof was placed on him to show material and substantial change of circumstances, and to prove that change of custody would be in the child's best interest, which ignored his preferential right to custody as the child's natural father. He argues that the burden of proof placed on him for termination of the guardianship was the same burden he would face if he had been found unfit as a matter of law. He argues that Oklahoma case law repeatedly has held that parents must affirmatively be found unfit in order to be denied custody of their children, and that in the absence of unfitness, the parental preference doctrine applies.
¶ 7 The guardians argue that the "best interests of the child" test is the proper test to be applied in all cases involving children, and that where the trial judge has found that it is in the child's best interest to remain under guardianship, this Court may not overturn the decision unless there has been abuse of discretion.
¶ 8 Title 30 O.S.1991 § 2-101 provides that the guardian of a minor may be appointed when it is necessary or convenient. Title 30 O.S.1991 § 2-103B provides that the court shall be guided by 10 O.S. § 21.1 in appointing a guardian for a minor[3]. Section 4-801 *360 lists grounds for removal of guardians. Section 4-801(8) provides that a guardian may be removed by the district court "when it is no longer proper that the ward should be under guardianship." Title 30 O.S.1991 § 4-804 provides for termination of the guardianship of a minor when it is no longer necessary:
"The guardian of an incapacitated or partially incapacitated person or minor may be discharged by the court when it appears to the court, on the application of the ward or otherwise, that the guardianship is no longer necessary." (emphasis added)
¶ 9 A guardianship is not a proceeding for termination of parental rights. The statutory language above implies that a guardianship is temporary, until such time as the factors leading to the guardianship are remedied. See, Wilkerson v. Davila, 351 P.2d 311, 315 (Okla.1960). This Court has not previously stated a "test" for termination of a guardianship of a minor child on the grounds that the guardianship is no longer necessary. Two previous decisions, however, make clear that where the natural parent is seeking to terminate a guardianship, the parent need only show that the impediments that led to the guardianship being imposed have been removed. In Grose v. Romero, 200 Okla. 330, 193 P.2d 1014, 1016 (1948), although decided on jurisdictional grounds, we observed that:
"Under the above statute and decisions [predecessor to 30 O.S. § 4-801(8) and Guardianship of Hight, 194 Okla. 214, 148 P.2d 475 (1944) ], upon an application made in the guardianship proceeding to terminate the guardianship of the person, and a showing that petitioner [mother] had recovered from the physical disability under which she labored, she would be entitled to the custody of the children unless it was clearly established that she was unfit, or that the change of custody was inimical to the welfare of the minors."
¶ 10 We later discussed the grounds for termination of the guardianship of a minor in In re Guardianship of Hatfield, 1972 OK 10, 493 P.2d 819.[4] In that case the trial judge denied natural mother's application to terminate the maternal grandmother's guardianship of two children of tender age. We reversed, holding that it was error to reject the mother's offer of proof to show that the guardianship should be terminated because she had become a fit and proper person to have custody and that such custody would be in the ward's best interest.
¶ 11 In Hatfield, the maternal grandmother had been appointed guardian of her daughter's two children, aged two and four years. Their mother was not married and the grandmother had been largely caring for the children. The mother had threatened to leave town with the children under "circumstances that would not be for the minors' best interests." Four years later the mother moved to terminate the guardianship, alleging that she had married and had established a good home, that she was a fit and proper person to have custody of her minor children and that the grandmother was not, and that it would be in the minor children's best interests to be returned to their mother. At trial, the mother offered proof to show changes in her circumstances from those existing at the time the guardianship was instituted, in an attempt to show that under [§ 4-801(8)] it was no longer proper that the minor be under guardianship. The trial court sustained the grandmother's objection to the introduction of this evidence and refused to terminate the guardianship. On appeal, we determined the controlling issue to be whether the trial court erred in rejecting the mother's *361 offer of proof to show that conditions had changed since the grandmother was appointed guardian. We approved the test that a third person's guardianship of minors is "no longer necessary" under paragraph 8 of the guardian removal statute when it is shown that the minors' natural parent or parents are fit to have their care and custody and that such custody would be for their best interests.
¶ 12 The trial court in the case at bar used the post-decree change of custody standard of proof set forth in Gibbons v. Gibbons, 442 P.2d 482 (Okla.1968), as the proper standard to be applied in this guardianship termination proceeding. Gibbons involved a mother's motion to modify a divorce decree to change custody from the father to herself. The mother sought to modify the decree by showing a change in her condition. We placed the burden of proof on the party seeking the change of custody to show: 1) material and substantial change in circumstances, and 2) that modifying the court's previous order would be in the best interests of the child. Gibbons was a contest between the natural parents for custody of their children. The case discussed custody matters between parents who were seeking custody, said that in attempts to change custody:
"Under these basic rules, the burden of proof is upon the parent asking that custody be changed from the other parent to make it appear: a) that, since the making of the order sought to be modified, there has been a permanent, substantial and material change of conditions which directly affect the best interests of the minor child, and b) that as a result of such change in conditions, the minor child would be substantially better off, with respect to its temporal and its mental and moral welfare, if the requested change in custody be ordered." (emphasis added)
¶ 13 The natural father in the case at bar argues and we agree, that the Gibbons test applies to contests between the natural parents for custody of their children. Our review of the record in the case at bar indicates that the burden of proof placed on the natural father, who had not been found to be unfit at any time, was that he must show, by clear and convincing evidence, 1) that he could provide for M. more than the guardians were currently providing her, 2) that a material and substantial change of condition had occurred, and 3) that it would be in M.'s best interests to terminate the guardianship. The trial judge found that the father had not met his burden of proof to show a change of condition "sufficient to change custody of M." Although recognizing that the father was not unfit, the trial judge found that "by clear and convincing evidence there is no evidence of material or substantial change since the entry of this Court's Order in 1993." The trial judge believed that the best interest of the child outweighed any "rights" of the natural parent to her custody and control, and he found that there was "overwhelming evidence that M.'s moral, temporal and physical welfare are provided by the Guardians and that it is in the best interests of the minor child that she remain with the Guardians." This was error.
¶ 14 The trial judge's ruling ignored the father's proof of changed circumstances that would enable him to provide a family home for M., the impediments that he previously faced having been removed. The trial judge also ignored the presumption that the best interests of the minor child is served by placement with its natural parent in the absence of clear and convincing evidence establishing that the parent is unfit. Previous cases make clear that the it has been presumed that the best interests of the child is to be with its parents, unless such custody would be inimical to the child's welfare. In Hood v. Adams, 1964 OK 217, 396 P.2d 483, the maternal grandmother proposed that it was for the best interest of the minor child that she be appointed guardian, contending that the father was a total stranger to the child. The child had been reared to her present age and carefully nurtured by her mother, step-father, and by her maternal grandparents. She knew and loved her step-father and maternal grandparents and wanted to remain with them. There was no question about the fitness of either the natural father or the grandmother. We said in that case:

*362 "In order to justify a court in depriving a parent of the care and custody of his child, the evidence offered to establish the unfitness of the parent must be clear and conclusive, and sufficient to show the necessity for so doing to be imperative.
In describing the "unfitness" that would deprive a parent of the care and custody of his child, we said:
"In a contest between the father and the grandparents, in order to deprive the father of the custody of his child, it must be shown that his condition in life, or his character and habits, are such that provision for the child's ordinary comfort and contentment or for its intellectual and moral development cannot be reasonably expected at the parent's hands." (emphasis added).
We further recognized that such "unfitness" must be positive and not comparative:
"The unfitness which will deprive a parent of the right to the custody of his minor child must be positive and not comparative; and the mere fact that the child might be better cared for by a third person is not sufficient to deprive the parent of his right to its custody."
The fact that a child might be better cared for by a third party is not sufficient reason for depriving a parent of custody of his or her child.
¶ 15 In considering the welfare of a child, the natural love and affection of a parent is of great importance. We said, in Alford v. Thomas, 316 P.2d 188 (Okla.1955), a habeas corpus proceeding:
"Parents have by nature, as well as law, the legal right to the custody of their minor children. This right will always control the judgment of the courts, unless circumstances of great weight and importance connected with the necessary welfare of the child exist to overcome such right."
See also, In re Guardianship of Hight, 194 Okla. 214, 148 P.2d 475 (1944).
¶ 16 It follows that there will be circumstances in which a natural parent should not have custody of his or her child, but this Court repeatedly has held that for custody to be taken from the parent there must be a showing, by clear and convincing evidence, of unfitness of the parent, and "unfitness" means that the parent is unable to provide for the child's ordinary comfort or intellectual and moral development, and the fact that the child might be better cared for by a third person does not deprive the parent of the right to custody. Sherrick v. Butler, 175 Okla. 538, 53 P.2d 1097 (1936) (noting that there was no evidence offered that the mother was unable or unfit to care for her child); Marcum v. Marcum, 265 P.2d 723 (Okla. 1954); Roberts v. Biggs, 272 P.2d 438 (Okla. 1953); Hollick v. McDaniel, 401 P.2d 466 (Okla.1965).
¶ 17 In Ingles v. Hodges, 562 P.2d 845 (Okla.1977), a habeas corpus proceeding brought by a natural father to obtain custody from the maternal grandparents, although noting that in a habeas proceeding involving only the issue of custody the parent's legal right was subordinate to the best interests of the child, we held that in the absence of a clear showing of unfitness of the father, he was entitled to have custody of his children. We reiterated that to deprive a parent of custody of his children in favor of a third person, the parent must be affirmatively, not comparatively, shown to be unfit. Further, the fact that the children stated a preference for staying with their grandparents was not sufficient to justify taking them from their father when there was no evidence of the father's unfitness. The children had been living with their maternal grandparents after the death of their mother, who had received custody in the divorce. The father had remarried and had other children, and testified that his present family would have no problems in accepting the girls or in providing a stable and loving atmosphere. We applied the parental preference and recognized that the child's best interest is presumed to be with the parents.
¶ 18 The trial judge in the case at bar believed that this Court had set a new standard for custody of minor children in Matter of Adoption of Baby Boy D, 1985 OK 93, 742 P.2d 1059. In that case the unwed father, who had expressed no interest in his child or its mother during the pregnancy or at anytime thereafter, sought to vacate a decree of *363 adoption entered without his consent. We said that the Constitution protects only parental rights of biological parents who have committed themselves to their children and have exercised responsibility for them. We discussed parental responsibilities and the formation of a parental relationship with the child and held that this father had no constitutional right to give his consent to the adoption. There we were talking about a the rights of a parent who had never acknowledged his child, much less established a relationship, to vacate a valid adoption.
¶ 19 Another case in which the father's parental rights had been terminated, In re Guardianship of T.R.W., 1985 OK 99, 722 P.2d 1197 is urged by the appellees as establishing that the best interests of the child is paramount to the parental right to custody. T.R.W. simply is not applicable in this case. In T.R.W., a father's parental rights were terminated for failure to protect the child from extreme physical abuse by the step-mother. There is no question that there are cases in which the children's welfare dictates that they cannot live with their natural parents.
¶ 20 In McDonald v. Wrigley, 1994 OK 25, 870 P.2d 777, a divorce action in which a grandmother moved to modify custody from the natural mother, the trial judge dismissed the action for lack of jurisdiction and thus prevented the grandmother from offering proof of the natural mother's unfitness. In an original proceeding before this court, we granted grandmother's petition. We reiterated that if a parent is not found to be unfit, then the parent is entitled to custody as against third parties who have no permanent or legal right to custody. Proceedings such as adoption or termination of parental rights, which result in permanent or legal rights to custody being placed with third parties require procedural safeguards as set out by statute. We noted that all grand-parental custody, absent a final termination order under title 10, may properly be considered temporary. We said that the concerns expressed by the United States Supreme Court in determining constitutional protection for the family unit, have been met by our legislature in providing procedural safeguards before parental rights may be judicially terminated in Oklahoma. For example, a parent under a § 1130 termination proceeding is statutorily allowed an opportunity to correct the condition by which he stands to lose the child before a termination order can become final.
¶ 21 Recently, in Matter of Adoption of R.W.S., 1997 OK 148, 951 P.2d 83, we cited Wrigley with approval. Our cases make clear that the parent is entitled to custody unless found unfit. The best interests of the child are presumed to be with the parents in the absence of clear and convincing evidence to the contrary. Natural parents will not be deprived of custody simply because another family might be able to provide more amenities and opportunities for the child.
¶ 22 The Supreme Court of Kansas recently reaffirmed the parental preference doctrine in a proceeding to terminate a voluntary guardianship. In Matter of Guardianship of Williams, 254 Kan. 814, 869 P.2d 661 (1994), the Kansas Supreme Court reversed the trial court's refusal to terminate the guardianship of a child of tender years who had resided with the guardian for most of its life, holding that absent highly unusual or extraordinary circumstances, the parental preference doctrine is to be applied in custody disputes over minor children when the dispute is between a natural parent who has not been found unfit, and a third party. The issue there was whether the trial court erred in holding that a parent seeking the termination of a voluntary guardianship must prove 1) that he or she is a fit parent, and 2) that a change of custody would materially promote the child's best interests and welfare. The court held that the natural parent, who had not been found unfit was not required to prove that the change of custody would materially promote the child's best interest and welfare. There were no allegations that the mother was unfit to have the care and custody of her child, but it was urged that it would be in the child's best interests for the guardianship to be continued.
¶ 23 The Kansas court discussed the best interests of the child test, noting that it had long been the preferred standard to apply *364 when the custody of minor children is at issue between the natural parents. However, "absent highly unusual or extraordinary circumstances, it has no application in determining whether a parent not found to be unfit, is entitled to custody as against a third-party non-parent." The Kansas court held that a mother who was not found unfit was not required to show that change of custody would materially promote the welfare of her child before she could regain custody and terminate the guardianship. See also, In re J.R.G., 218 Mont. 336, 708 P.2d 263 (1985), where the natural mother petitioned to terminate the maternal grandmother's guardianship of her child, who had lived with its grandmother since shortly after its birth, under a Wyoming statute that read: "Any person interested in the welfare of a ward. . . may petition for removal of a guardianship on the ground that removal would be in the best interest of the ward." On appeal, the Wyoming Supreme Court held that the burden was not on the natural mother to prove that the best interests of the child would be furthered by a return of custody to her, but rather was on the guardian to prove that the best interest of the child would be served by continuation of the guardianship. The court stated that a guardianship is not a proper proceeding in which to terminate parental rights, and for that reason it must always be regarded as temporary until the parents can undo the hindrance that led to establishment of the guardianship.
¶ 24 We recognized in R.W.S., supra, that a great deal of anguish is involved in separating a small child from its beloved guardians, and we recognize the same in this case. It is unfortunate that parents are not always in a position to care for their children, and it is fortunate that loving and caring persons step in to fill the void. It is always hoped that the situation will be temporary and that the parent will soon be in a position to resume custody. Despite the unsettling and upsetting change in residence, a young child is entitled to the love and affection of its natural parent when that parent can provide it. There has been no suggestion that M. will not be able to continue a relationship with the Navejars when the guardianship is terminated. Indeed, when a child has lived for a long period of time in the care of another, the utmost care should be given to making the transition into the home of the natural parent as smooth as possible under the circumstances. We have noted before that parents who recognize their inability to care for their children temporarily and find or allow responsible persons to do so should be commended. This father has supported his child, he has remained involved in her life, and he wants her to come home to the home that he can now provide for her.
¶ 25 Clearly the trial judge in the case at bar felt that the Navejars have done a wonderful job of caring for M. and was reluctant to disrupt M.'s life with them. The Navejars fiercely desire to keep M. and their desire is evident. When interviewed by the trial judge, six-year old M. did not want to leave the Navejars. The trial judge's questions to David Schneider reflect that he placed an erroneous burden of proof on the natural father to show that he could better provide for M. than could the Navejars.[5] There is no evidence in the record provided to this Court that David Schneider was not a fit parent or that David Schneider and Lisa Schneider were not able to provide for M.'s welfare and offer her a loving home.
¶ 26 It is clear, both by statue and by case law, that the guardianship may be terminated when the reasons for which the guardianship was established no longer exist. The guardianship will deemed "no longer necessary" when the impediment to the natural parent's custody has been removed, unless to do so would be inimical to the welfare of the child. In re Guardianship of Hatfield, 1972 OK 10, 493 P.2d 819 (1972); Grose v. Romero, 200 Okla. 330, 193 P.2d 1014, 1015 (1948). The burden of proof for termination of a guardianship as "no longer necessary" is on the person seeking termination to show by clear and convincing evidence that the conditions that led to creation *365 of the guardianship have been corrected. If that person is a parent who has been found unfit, then fitness must be established. If the parent has not been found unfit, then the parent must show that the conditions which resulted in the guardianship being established have changed and that the parent is now able to take care of his children. The parent in the case at bar has proved by clear and convincing evidence that he has had a change of circumstances which render the guardianship no longer necessary. The child's best interests are presumed to be with the natural parent and there is no evidence in this case that terminating the guardianship would be inimical to the child's welfare. It was error for the trial judge to refuse to terminate the guardianship.
¶ 27 There are no allegations in this action that the father is unfit. There is no evidence before this Court of unfitness on the part of the father, of any abandonment by the father, or of disregard for his child's welfare. The briefs on behalf of the guardians and the child make unsubstantiated statements in an attempt to argue facts not in evidence. We do not approve of the attempts made by the appellees to influence this Court by insinuations that are not presented by the record. The record presented to this Court establishes by clear and convincing evidence that the guardianship is no longer necessary. The only testimony was that David Schneider had been unable to care for his daughter on a full-time basis because he was single and was on call twenty-four hours per day. At the hearing to terminate the guardianship, all of these impediments were shown to have been removed. As noted previously, this was not an action involving termination of parental rights, allegations of harm to a child, or proceedings for adjudicating a child to be deprived. This is an action to terminate a guardianship of a minor child, established by agreement of the parties, on the grounds that the guardianship is no longer necessary. The natural father established by clear and convincing evidence that the conditions on which the guardianship was created no longer exist.
¶ 28 After certiorari was granted in this case, the Navejars sought leave to file a supplemental statement of facts and brief because "significant facts and events have occurred" since the trial court ruling on which the appeal is based and "such facts and events affect the best interests of the minor child." The father has objected to the allowing of supplemental statement and briefs. The motion fails to follow Supreme Court Rule 1.6 for the presentment of motions, as it is without citation of authority and contains no statement of relevant facts upon which the motion is based. In any event, Supreme Court Rule 1.28 provides that material not before the trial court at the time of the decision appealed are not properly part of the record on appeal without order of the trial court or the appellate court. It would be improper for this Court to consider facts not in evidence before the trial court. If there are new facts reflecting a necessity for guardianship since the trial court's ruling in this case, they should be presented to the trial court in a proper proceeding.
CERTIORARI GRANTED PREVIOUSLY; OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; THE TRIAL COURT'S ORDER IS REVERSED AND THE CAUSE IS REMANDED WITH DIRECTIONS TO ENTER AN ORDER IN CONFORMANCE WITH THIS OPINION.
¶ 29 All Justices concur.
NOTES
[1] The Court of Civil Appeals' opinion states that Kay Navejar is the daughter of David Schneider's father's ex-wife.
[2] The transcripts of the guardianship proceeding are not included in the record on appeal.
[3] Title 10 O.S.1991 § 21.1. Preference Order for Custody or Guardianship.

A. Custody should be awarded or a guardian appointed in the following order of preference according to the best interests of the child to:
1. a parent or to both parents jointly except as otherwise provided in subsection B of this section;
2. a grandparent;
3. a person who was indicated by the wishes of a deceased parent;
4. a relative of either parent;
5. the person in whose home the child has been living in a wholesome and stable environment; or
6. any other person deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child.
[4] See also, Olinghouse v. Olinghouse, 1995 OK CIV APP 104, 908 P.2d 280, a relinquishment case in which the Court of Civil Appeals held that the burden of proof properly was placed on the minor child's aunt to show that the mother was unfit or that it was in the child's best interest to remain with her aunt, and that aunt had not met her burden to provide a record that would overcome the presumption of correctness of the trial court's decision awarding custody to the mother. In Matter of Guardianship of Nix, 1996 OK CIV APP 43, 917 P.2d 491, the Court of Civil Appeals refused to revoke a paternal grandmother's guardianship where a finding that the mother's unfitness to provide for her child's ordinary comfort or intellectual and moral development was not against the clear weight of the evidence.
[5] For example, the trial judge asked David Schneider: "As the father of [M.], what can you tell me that you can do for this child that isn't being provided for this child at this time?" Tr. p. 66.