999 P.2d 448 (1999)
2000 OK CIV APP 20
In the Matter of the Interest of N.L.W., a minor child born 7 August 1988.
Robin Lynn Simpson, (now Robin Hyer), Appellant,
v.
Brad Lee Walters, Raymond Walters and Ilene Walters, Appellees.
No. 92,429.
Court of Civil Appeals of Oklahoma, Division No. 2.
December 28, 1999.
Donna Phillips, Phillips Law Firm Fayetteville, Arkansas For Appellant.
Tim K. Baker, Tim K. Baker & Associates, Tahlequah, Oklahoma For Appellee Brad Lee Walters.
J. Dewayne Littlejohn, Littlejohn, Adair & Gray, P.C., Stilwell, Oklahoma, For Appellees Raymond & Ilene Walters.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 2.
*449 REIF, J.:
¶ 1 This appeal arises from a habeas corpus proceeding in August of 1997. The mother of N.L.W. sought the child's return from his paternal grandparents. Mother was awarded custody of N.L.W. at age two in November of 1989 following a custody dispute with the paternal grandparents. Later, however, Mother permitted N.L.W. to reside with his paternal grandparents from late 1990 through the spring of 1997. Mother testified that she spent as much time with N.L.W. as her work requirements would allow during the time N.L.W. resided with his paternal grandparents. Mother noted that N.L.W. had spent most of the summer of 1997 with her and her husband and that her intent was to prepare N.L.W. for the change to live with her. Mother pointed out that she and her husband had been married for some fourteen months, owned a home and had provided N.L.W. his own room. Mother felt like the time had come for N.L.W. to reside with her in Fayetteville, Arkansas, despite the fact he had lived from ages two to nine with his grandparents in Oklahoma and was well adjusted in the Oklahoma school he had attended.
¶ 2 The court denied Mother's writ, stating "this [grandparents' home] is really the only home ... this boy has ever known" and "because we're [so close to] the beginning of school." Following protracted proceedings to settle a journal entry and to review Mother's motion to reconsider [new trial], Mother filed this appeal January 7, 1999.
¶ 3 Both in the trial court and here on appeal, Mother has stressed that there was no question about her fitness and ability to care for N.L.W. at the time of the hearing on her writ of habeas corpus. Mother points out that the trial court acknowledged her fitness by stating on the record: "I'm not saying you're not a good parent." Mother has argued that once her fitness was established, she was entitled to custody of N.L.W. in accordance with nearly every parent/third-party custody case that has been decided since 1960. Mother contends that the case law since 1960 represents a new line of authority that markedly departs from the best interests/balancing test that the supreme court used prior to 1960.
¶ 4 In reviewing the record and applicable law, we agree that Mother is a fit and proper parent; however, we cannot agree that the longstanding best interests/balancing test has been replaced by a rigid rule that custody must be awarded to a parent in every case where the parent is fit and able to provide for the child. The case authority relied upon by Mother simply reflects special guidance in applying the best interests/balancing test to prevent it from being used to favor third parties on the basis of "comparative fitness."
¶ 5 The post-1960 viability of the best interests/balancing test is best reflected in the 1984 case of Application of Grover, 1984 OK 20, ¶ 8, 681 P.2d 81, 82-83. In Grover, the supreme court stated: "In a minor child custody contest between a grandparent and a *450 natural parent ... three rights or interests are to be regarded: `First, that of the child; second, that of the parent; third, that of those who have for years discharged all the obligations of parents.'" The court acknowledged its prior holdings that the parental right to care and custody of a child is "a fundamental right protected by the federal and state constitutions." Id. at ¶ 9, 681 P.2d at 83 (citations omitted). However, the court also stated that "[i]n ... giving effect to the tenured right of a natural parent to the custody of his or her natural child, the overriding consideration is the best interests of the child." Id. at ¶ 10, 681 P.2d at 83 (citations omitted) (emphasis added).
¶ 6 In deciding the Grover case, the supreme court noted that the trial court left custody with the grandparents, because the trial court found "other factors present which outweigh the preference of the law for a natural parent [who is otherwise fit]." Id. at ¶ 5, 681 P.2d at 82. The Grover opinion does not indicate what the "other factors" were. In reversing the trial court, the supreme court did not disapprove of this balancing analysis, but simply disagreed with the trial court's conclusion that the "other factors" favoring grandparental custody  whatever they were  outweighed the claim of custody by an otherwise fit parent.
¶ 7 The best interests/balancing test was established by the supreme court in the case of Bishop v. Benear, 1928 OK 553, 132 Okla. 116, 270 P. 569. The syllabus of the court in this case delineates the test and provides guidance for its application:
1. The parents have by nature, as well as by law, the legal right to the custody of their minor children. This right will always control the judgment of the court, unless circumstances of great weight and importance connected with the necessary welfare of the child exist to overcome such strict legal right.
2. When resolving the question what will best subserve the interest and happiness of a child, its own wishes and choice may be consulted and given weight, if it be of an age and capacity to form a rational judgment. The wishes of children of sufficient capacity should be given especial consideration when their parents have for a long time voluntarily allowed them to live in the family of another.
3. Where a parent permits his minor children to live in the family of another, their grandparents, for many years, until the children have formed other ties, and a different direction has been given to their course of life, the courts may properly give weight to the condition of the children's present surroundings and all advantages which a continuance in those surroundings may reasonably be expected to give. Chapsky v. Wood, 26 Kan. 650, 40 Am. Rep. 321.
4. "In such cases three rights or interests are to be regarded: First, that of the parent; second, that of those who have for years discharged all the obligations of parents; and third, and chiefly, that of the child." [Chapsky v. Wood].
¶ 8 In the Bishop case, the parent had permitted three children to reside with their grandparents for seven years. The youngest child in Bishop was three years old at the time she began living with the grandparents and was ten at the time of the custody dispute. In the body of the opinion, the Bishop court stated:
In controversies of this character, three matters are to be regarded  the rights of the parent, the rights and interests of the person or persons to whom the care and custody of the infant child has been given by the parent, and the welfare of the child; and, of these three, the last mentioned is the matter of primary and paramount importance. If the [parent], by agreement, surrenders the care and custody of his child to another, such surrender is not absolute and irrevocable; but, if a contention arises in the courts with reference to such relinquishment, much will depend upon the characters and habits of the contending parties, the fact whether the reclamation is sought within a short time or after the lapse of years, and the circumstances of the particular case. All other considerations, however, will be subordinated *451 to the interest and welfare of the child.
Id. at ¶ ___, 270 P. at 572 (emphasis added).
¶ 9 In Bishop, the supreme court reversed the trial court's award of custody to a parent who was fit and able to provide for them. The supreme court reversed with directions to the trial court to "tak[e] into consideration the wishes of the children and their interest and welfare." Id. The supreme court found that the "wishes and choice" of the children should be considered after seven years of residing with their grandparents, because "[t]he record shows they ... were intelligent and thoughtful children." Id. In the instant case, the record shows N.L.W. is an intelligent and thoughtful child, and he expressed a choice to remain with his grandparents.
¶ 10 The supreme court did not have to wait until 1960, or subsequent years, to address and resolve another parent/third-party custody dispute where the parent was not unfit. In Osburn v. Roberts, 1946 OK 129, 197 Okla. 206, 169 P.2d 293, 294, the supreme court affirmed the denial of a writ of habeas corpus to a father who sought return of the three-year-old child he had given to his sister to raise on the second day after the child's birth. The court noted that the father was "a farmer, living on a rented farm and is in good financial circumstances [and] the plaintiff [father] and defendants [sister and her husband] have good reputations, and neither attacks the character of the other or the ability of the other to properly care for the child."
¶ 11 The Osburn decision gave a summary of factors to be considered "[i]n deciding cases of this nature" that would later be cited verbatim in the 1995 case of Olinghouse v. Olinghouse, 1995 OK CIV APP 104, ¶ 13, 908 P.2d 280, 286, upon which Mother relies. Both Osburn, 169 P.2d at 294, and Olinghouse, 1995 OK CIV APP 104, ¶ 13, 908 P.2d at 286, apply the following rules:
(a) Since the trial judge has a better opportunity to observe the parties and witnesses, he is in a better position to know what is best for the child than is this court from a review of the record, and his finding will not be disturbed unless it is clearly against the weight of the evidence or is contrary to law; (b) there are three rights or interests that are to be given consideration in the following order of importance (1) that of the child, (2) that of the parent, and (3) that of those who have for years discharged all the obligations of parents; (c) when asked to take the custody from those who have for a considerable period of time nurtured and cared for the child and to restore it to the parent, it is proper for the courts to consider the ties of love and confidence that have grown up between the child and its foster parents and whether it is best for the child not to disturb that relationship; (d) children are not, like chattels, subject to an irrevocable gift, barter or sale, though the fact that a parent has relinquished custody of his child to others should be given due consideration; (e) unless the welfare of the child requires it, a parent will not ordinarily be denied its custody unless the parent is shown to be unfit to have its custody; (f) each such case must be determined upon its own peculiar facts and circumstances.

(Emphasis added.)
¶ 12 In Osburn, 169 P.2d at 294, the supreme court acknowledged that the supreme court itself "has applied these principles with different results in several cases." However, the court explained such divergence by noting that there is "no class of cases that gives the courts greater concern than this class." Id. at 295. The court also sought to explain the divergence of results by acknowledging that "the trial court [is] in [a] better position to determine the best interests of the child than is [an appellate court which] should not reverse [a trial court] unless for most compelling reasons." Id.
¶ 13 In the instant case, there is nothing to indicate that the trial court decided the custody of N.L.W. on the basis of "comparative fitness." To the contrary, the court properly considered the fact that Mother had "for a long time voluntarily allowed [N.L.W.] to live in the family of another" and that N.L.W. had "formed other ties, and a different direction has been given to [the] course of [his] life" which included his educational *452 adjustment and progress. The grandparents, "who have for years discharged all the obligations of parents," had a significant interest in maintaining custody in the best interest of N.L.W., and it was apparent that "love and confidence have grown up between the child and [his grandparents]." In addition, N.L.W. wanted to remain with his grandparents. These are "circumstances of great weight and importance connected with the necessary welfare of the child [that] overcome [the] strict legal right [of a parent]." Bishop (syllabus 1). Like the supreme court in Osburn, 169 P.2d at 295, we believe that "the trial court was in [a] better position to determine the best interests of the child," based on the peculiar facts and circumstances presented, and that there are no "compelling reasons" to disturb the trial court's decision. The trial court did not err in denying Mother's writ of habeas corpus in August of 1997 nor her motion to reconsider [new trial].
¶ 14 In conclusion, this court would offer the parties herein the final observation made by the court in the Osburn case: "If there be differences between these parties, such differences should be composed, with the best interests of the child being the paramount question, each recognizing the rights of the other party." Id. At the writing of this opinion, N.L.W. is eleven years old. Assuming that N.L.W. has continued to reside with his parental grandparents, N.L.W. has most likely completed the fall semester of the school he has always attended. The parties should consider postponing any further decisions or legal action concerning N.L.W.'s custody, at least until he can complete the current school year.
¶ 15 AFFIRMED.
¶ 16 STUBBLEFIELD, P.J., and TAYLOR, J. (sitting by designation), concur.