**James Dean LIVELY and Glennis Louise Lively, Appellants,**

v.

**Dorothy M. LIVELY, Appellee.**

**No. 76975.**

Court of Appeals of Oklahoma, Division No. 4.

March 30, 1993.

Certiorari Denied May 18, 1993.

Approved for Publication by Order of the Supreme Court.

Ray Lee Wall, Stillwater, for appellants.

Gary L. Bracken, Ponca City, for appellee.

## OPINION

STUBBLEFIELD, Judge.

On August 14, 1989, Plaintiffs James Dean Lively and Glennis Louise Lively, parents of Ricky Wayne Lively and paternal grandparents of four-year-old Jesse Wayne Lively, filed this action seeking custody of their grandson. They alleged that their son died on August 13, 1985, three months before the birth of their grandson, and that they had been the primary care-givers of the child since his birth. They also alleged that the whereabouts of natural Mother, Dorothy M. Lively, were unknown. Mother, however, did receive notice of the lawsuit and answered on September 6, 1989. Mother claimed the trial court lacked subject matter jurisdiction because Grandparents had failed to state a claim for relief under Oklahoma law and did not have standing to request the relief sought.

Mother later filed a motion to dismiss based on the same contentions set out in her answer, claiming "only the State of Oklahoma through the Department of Human Services has such right" to deprive her of custody of her child. In the alternative, Mother sought summary judgment based upon the uncontroverted facts that, as the result of the father's death prior to the birth of the child, she became the sole guardian of the child at birth, and that Grandmother had testified at an earlier hearing that Mother would be a fit parent. Mother acknowledged that Grandparents had a right to visitation.

On September 13, 1990, the trial court entered an order denying Grandparents' petition for custody but informed them that they had the right to petition the court for visitation. In a motion to reconsider, Grandparents asserted that the trial court clearly had jurisdiction because their "evidence would clearly show [Mother] has abused her parental authority," which they claim is a basis for a private custodial challenge under 10 O.S.1991 § 9. They pointed to long periods of time during which Mother left the child with Grandparents "without contacting the child or providing support" in addition to other behavior of Mother as indicative of abuse of parental authority. Grandparents cited language in *Davis v. Davis*, 708 P.2d 1102, 1104–05 (Okla.1985), where the court recognized that "[i]n a purely private interparental proceeding either to free a child of a parent's dominion or to effectuate the termination of parental bond, the plaintiff must resort to remedies provided under [section 9]." On December 27, 1990, the trial court reiterated its finding that Grandparents could seek visitation but did not have standing to seek custody and denied Grandparents' motion to reconsider.

Grandparents then filed this appeal, although they also filed in the trial court a motion to retain jurisdiction pointing out recent legislative changes in section 9 specifically adding *grandparents* to that group which may adjudicate abuse of parental authority. The supreme court held that the motion to retain was a functional equivalent of a post-judgment motion or petition to vacate under the provisions of 12 O.S.1991 § 1031, and stayed the appeal proceedings to afford the trial court an opportunity to pass upon the pending motion.

The trial court dismissed the "post-judgment motion or petition to vacate" because it had not been timely filed, but ruled alternatively that, if the motion or petition were timely filed, the provisions of section 9 had been previously argued and rejected by the trial court and the subsequent amendments to the statute "would not change the ruling of the court made September 13, 1990." On October 4, 1991, the supreme court lifted the suspension of appellate proceedings.

Grandparents' single proposition of error is that pursuant to the provisions of 10 O.S.1981 § 9, the trial court had jurisdiction, in a private civil action, to free a child of parental control and dominion upon a showing by Grandparents of an abuse of parental authority.

Title 10 O.S.1981 § 9 (emphasis added), provided:

### Abuse of parental authority—Civil action

The abuse of parental authority is the subject of judicial cognizance in a civil action in the district court brought by the child, *or by its relatives within the third degree, . . . and* when the abuse is established, the child may be freed from the dominion of the parent, and the duty of support and education enforced.

The "enigma" of 10 O.S.1981 § 9, was noted by Robert G. Spector, *A Primer on Third–Party Custody in Oklahoma: The Interrelationship Between Divorce, Habeas Corpus, Guardianship and The Juvenile Code*, 61 Okla.B.J. 2465, 2467 (Sept. 29, 1990). Citing the dissenting opinions in *Leake v. Grissom*, 614 P.2d 1107 (Okla.1980), and *Logan v. Smith*, 602 P.2d 647 (Okla.1979), and dicta in *Davis*, 708 P.2d 1102, and, *In re C.G.*, 637 P.2d 66 (Okla.1981), Professor Spector noted that although it has been suggested that section 9 "is the vehicle for all private third party custody claims," it "has never received a definitive construction" but "remains a matter of speculation."

The court in *Davis*, 708 P.2d at 1104, was presented with "whether an involuntary termination of parental bond may be effected in a private interparental proceeding [termination of parental rights] based upon the grounds provided in 10 O.S.1981 § 1130(A)(4)." The court ruled that remedies provided by the "so-called Juvenile Code, [10 O.S.1981 §§ 1101–1506], are to be viewed as restricted to public-law contests in which the state may rightly assert an interest *qua parens patriae*." *Id.* However, the *Davis* author further stated:

In a purely private interparental proceeding either to free a child of a parent's dominion or to effectuate the termination of parental bond, the plaintiff must resort to the remedies provided under either 10 O.S.1981 § 9 or § 60.6(3). (Footnotes omitted.)

*Id.* at 1104–05.

The *Davis* author was a dissenter in *In re A.E.*, 743 P.2d 1041, 1051 (Okla.1987) (emphasis added), and noted section 9 and 10 O.S.Supp.1986 § 60.6, and acknowledged that "Oklahoma's statutory scheme provides remedies for judicial restraint of parental control as well as for the severance of parental bond *both within and outside the Juvenile Code.*" Thus, there has been at least a judicial suggestion that the legislative intent of section 9 was to allow "relatives within the third degree" to bring actions to protect children by change of custody from the natural parent.

Here, such an action seems to be Grandparents' only possible recourse. 12 O.S. 1991 § 1354, does authorize the use of a habeas corpus proceeding to "enforce the rights and for the protection of infants," but only in instances where the infant is not in the possession of petitioner. Here, when Grandparents originally filed their petition, they alleged they did have possession of the child.

Mother, in response to the section 9 claim, contends that Grandparents did not assert the provisions of that section as a basis for custodial proceedings until they filed their motion to reconsider. However, the trial court stated in its August 15, 1991, order that "Title 10 O.S. Sec. 9 has been previously argued to this court and said argument was rejected." Therefore, this court must presume that the trial court appropriately heard the argument and still found that Grandparents lacked standing to bring the action.

Though section 9 has largely been ignored through the years, the plain language of the law indicates a clear legislative intent to create a private right in certain third parties to make custody claims in the specific instance of abuse of parental authority. Section 9 was originally enacted in 1910—a time when governmental social welfare programs were largely non-existent. It was a time before the creation and development of state agencies charged with the protection of children and with the specific duty of investigation of child abuse. 21 O.S.1991 §§ 845–846. Thus, the private right granted by section 9 offered what little protection children had from abusive parents.

Although times have changed and the state has assumed a more active and, in

fact, preeminent role in the protection of children, it is impossible to say that the laws specifying the rights and duties of the state offer such protection of children that no other remedies are needed. Indeed, the legislature has recently amended section 9 to more clearly define the third-party class which has the right to bring a private action. In 1991, section 9 was amended to the following:

> The abuse of parental authority is the subject of judicial cognizance in a civil action in the district court brought by the child or any grandparent on the child's behalf, or by its relatives within the third degree of consanguinity or affinity, or by the officers of the poor where the child resides or by any foster parent of the child or any person who has been a foster parent of the child; and when the abuse is established, the child may be freed from the dominion of the parent, and the duty of support and education enforced.

Thus, section 9, which might previously have been subject to characterization as an anachronistic, unnecessary law has now received recent legislative attention and received a new breath of life. We must conclude that the legislature has affirmed its original legislative intent and has particularly emphasized the role of grandparents in the protection of children.

Here, Grandparents made allegations indicative of an abuse of parental authority. They alleged that they had been the "primary providers for the care and welfare [of the child] since his birth," they did not know where Mother was, Mother had "minimal contact with the child during the past year," and Mother had "voluntarily left the child with [Grandparents] and has made no attempts to advise [them] on her whereabouts." They also contended that evidence would show that Mother had not properly cared for the child and that the child had been mistreated while in Mother's custody.

We find these allegations sufficient to raise the issue of whether Mother has abused her parental authority. Therefore, we find that Grandparents properly invoked the trial court's jurisdiction, and it was incumbent upon the trial court to determine whether Grandparents could establish abuse of parental authority by the clear weight of the evidence. *In re C.G.*, 637 P.2d at 69–70 n. 8.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

BOUDREAU, P.J., and TAYLOR, J., concur.