Vera McDONALD, Petitioner,

v.

Honorable Joseph WRIGLEY, Special Judge of the District Court of Seminole County, Respondent.

No. 82464.

Supreme Court of Oklahoma.

Feb. 22, 1994.

Kenneth Daniel Chesnutt, Oklahoma City, for petitioner.

Bill Hazelwood, Shawnee, for respondent real party in interest.

SUMMERS, Justice.

Father and mother were divorced in 1986. The mother now has custody of the child. Paternal grandmother obtained an order for visitation in 1989. In 1993 the grandmother sought custody by intervening in the divorce proceeding with a motion to modify custody filed in the court that rendered the divorce decree. The trial court granted temporary custody to Grandmother for a few days, but then dismissed the proceeding for lack of jurisdiction, and thus triggered an appeal by Grandmother. For the same reason the court dismissed Grandmother's application for temporary custody pending appeal, and thus triggered this original action. Grandmother petitions us, in this case, to direct the trial court to conduct a hearing on her motion for temporary custody pending appeal, and to rule on its merits. The mother responds that the trial court correctly found it lacked jurisdiction. We assume original jurisdiction and grant relief.

The trial court relied upon *Logan v. Smith,* 602 P.2d 647 (Okla.1979). In that case we said:

> There is no authority, statutory or otherwise, in this state which authorizes a third party to file a petition for modification of the court's judgment relative to the care and custody of children in a divorce proceeding.

*Id.* 602 P.2d at 649. The grandparent was relegated to a remedy provided in the so-called Juvenile Code, now 10 O.S.1991 §§ 1101 et seq. But subsequent to *Logan,* in *In re Bomgardner,* 711 P.2d 92 (Okla.1985), we recognized that grandparents could bring an action to obtain court-ordered visitation for their deceased daughter's offspring. In that case we acknowledged the grandparents' statutory[1] standing, and then said that "Equity recognizes—independent of statute—the grandparents' claim to the companionship of their grandchild." *Id.* 711 P.2d at 97.[2] The question, then, is whether the *Bomgardner* language is applicable in this case where custody, and not mere visitation is sought.[3]

■ Divorce is a statutory proceeding. *Langley v. District Court of Sequoyah County,* 846 P.2d 376, 377 (Okla.1993). In the context of a divorce proceeding a district court "[s]hall make provision for guardianship, custody, medical care, support and education of the minor children; ...." 43 O.S.Supp.1993 § 112. See also 43 O.S.1991 § 108, providing that "the court may for good cause shown make such order as may be proper for the custody, maintenance and education of the children,..." No statute has been raised by the parties that specifically gives a grandparent, as such, standing to intervene in a divorce for the purpose of obtaining custody of minor children.

But courts have long held that statutory language similar to that in § 108 and § 112 is sufficient for a divorce court to award custody of a minor child to a third party when the parents are unfit. For example, see *Mahaffey v. Mahaffey,* 176 Miss. 733, 170 So. 289 (1936) where that court discussed awarding custody to a third party when the parties to the divorce were unfit as parents, and the third party was before the divorce court either upon a formal intervention or by personal appearance in open court. *See also Collins v. Collins,* 76 Kan. 93, 90 P. 809 (1907), (statutory language similar to 43 O.S.1991 § 108). In *State ex rel. Cox v. Lohah,* 434 P.2d 928 (Okla.1967) our own Court explained that a district court possessed the statutory authority under 12 O.S.1961 § 1277, now codified at 43 O.S.Supp.1993 § 112, to award custody to a third party if both parents are unfit.

■ Later, in *Haralson v. Haralson* 595 P.2d 443 (Okla.1979) we considered the burden of a father seeking custody of his children when the trial court order had the result of awarding custody to a maternal grandparent:

This Court has repeatedly held that to deprive a parent of the custody of his children in favor of a third person, the parent must be affirmatively, not comparatively, shown to be unfit. The mere fact that a child might be better cared for by a third person is not sufficient to justify taking a child from its parent. In order for third persons to deprive a parent of custody of his children, some inability on the part of the parent to provide for the child's ordinary comfort, intellectual or moral development must be shown. Evidence of unfitness must be clear and conclusive and the necessity for depriving the parent of custody must be shown to be imperative. In a divorce case, the district court may award custody to a third person if both parents are found to be unfit. If a parent is not found to be unfit, is able to

1. 10 O.S.1991 § 5.

2. *See Legal Rights of Children,* § 6.12 at 255–259 (R. Horowitz & H. Davidson ed. 1984) (the common law provided that a grandparent could not obtain visitation over a parent's objection unless the grandparent could successfully challenge the parent's fitness as a parent, and several states have enacted statutes providing for grandparental visitation under certain circumstances to overcome the common law absence of rights springing from a person's status as a grandparent); 31 A.L.R.3d 1187–1220 (1970), (annotation discusses custody disputes between parents and grandparents). *Cf.* III J. Story, *Commentaries on Equity Jurisprudence,* § 150, 366–367 (14th ed.

1918) (jurisdiction of the Court of Chancery in interfering between parent and child is explained by quotes from Lord Eldon in *Wellesley v. Duke of Beaufort,* [1827] 2 Russ. 1, 38 E.R. 236 and Lord Redesale when the case was on appeal before the House of Lords in *Wellesley v. Wellesley,* [1828] 2 Bligh N.S.P.C. 124, 4 E.R. 1078).

3. This Court did not extend the *Bomgardner* language for the benefit of a grandparent seeking visitation in a purely statutory *adoption* case, where the adoptive parents had no blood ties to the child. *Matter of Adoption of G.D.L.,* 747 P.2d 282 (Okla.1987).

care for his children and desires to do so, he is entitled to custody as against others who have no permanent or legal right to custody.

*Id.* 595 P.2d at 445, footnotes omitted. If a parent is not found to be unfit then that parent is entitled to custody as against third parties who have no permanent or legal right to custody, but the District Court may award custody to a third person if both parents are found to be unfit. *Id.* See also *Marshall v. Marshall,* 555 P.2d 598, 599 (Okla.1976) where the same rule is stated, and also *Gibson v. Dorris,* 386 P.2d 186, 188 (Okla.1963).

■ In order for a divorce court to be able to award custody to a third party that party must be before the court. In *West v. Griffin,* 207 Ark. 367, 180 S.W.2d 839, 840–841 (1944) the Court stated that child custody could not be given to paternal grandparents when they were not parties to the divorce proceeding. *See also Boone v. Boone,* 8 N.C.App. 524, 174 S.E.2d 833, 835 (1970) (order of court that children remain in home of third parties was unenforceable since they were not parties to the lawsuit). *Cf. Cartwright v. Atlas Chemical Industries, Inc.,* 623 P.2d 606, 611 (Okla. 1981) (judgments bind only parties and those in privy with them—not strangers to the judgment).

■ Although intervention is usually described as a statutory right, *Mantooth v. Colbert,* 178 Okla. 395, 62 P.2d 1235, 1237 (1937), a court does possess the power to allow a person to voluntarily intervene and become a party apart from the statutory authority for intervention. *Sizemore v. Dill,* 93 Okla. 176, 220 P. 352 (1923). An example of this permissive intervention based upon a "principle of manifest justice" is found at *Tulsa Rock Co. v. Williams,* 640 P.2d 530, 532 (Okla.1982). A grandparent is within the statutory class with preferential consideration for appointment as a guardian or custodian of a child. 10 O.S.1991 § 21.1.[4] As a practical matter the grandparents may be among those the best informed as to the

circumstances surrounding the parental care given to a grandchild, and an obvious source of information for a trial judge in determining the best custodian of a child.

*Lively v. Lively,* 853 P.2d 787 (Okla.App. 1993) (Approved for publication by order of the Supreme Court) was not a divorce case. But therein the Court recognized 10 O.S.1991 § 9, which says:

The abuse of parental authority is the subject of judicial cognizance in a civil action in the district court brought by the child or any grandparent on the child's behalf, or by its relatives within the third degree of consanguinity or affinity, or by the officers of the poor where the child resides or by any foster parent of the child or any person who has been a foster parent of the child; and when the abuse is established, the child may be freed from the dominion of the parent, and the duty of support and education enforced.

Although the mother claimed that any action to diminish her parental authority must be brought by the State through the Department of Human Services, the Court of Appeals disagreed. It observed that the statute, which in large part was on the books long before the Juvenile Code was adopted, had been infused with new vigor due to a 1991 legislative amendment. The grandmother was thus allowed in that case to pursue custody under § 9 based on parental abuse, demonstrating that a § 1130 termination proceeding is not the exclusive remedy in such matters.

In considering grandparental custody at the expense of a natural parent we must take into account certain Constitutional implications. The United States Supreme Court has explained that the parent-child custodial relationship has a constitutionally protected element when a state seeks to sever that relationship. For example, in *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) the court stated:

---

**4.** 10 O.S.1991 § 21.1 states in part:
 A. Custody should be awarded or a guardian appointed in the following order of preference according to the best interests of the child to:

1. a parent or to both parents jointly except as otherwise provided in subsection B of this section;
2. a grandparent.

In some cases, however, this Court has held that the Federal Constitution supersedes state law and provides even greater protection for certain formal family relationships. In those cases, as in the state cases, the Court has emphasized the paramount interest in the welfare of children and has noted that the rights of the parents are a counterpart of the responsibilities they have assumed.... The linkage between parental duty and parental right was stressed again in *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438 [442], 88 L.Ed. 645 (1944), when the Court declared it a cardinal principle "that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Ibid.* In these cases the Court has found that the relationship of love and duty in a recognized family unit is an interest in liberty entitled to constitutional protection. See also *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion). "[S]tate intervention to terminate [such a] relationship ... must be accomplished by procedures meeting the requisites of the Due Process Clause." *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388 [1394], 71 L.Ed.2d 599 (1982).

*Lehr v. Robertson,* 463 U.S. at 257–258, 103 S.Ct. at 2991, material omitted. The Oklahoma Supreme Court has also recognized these principles. In *J.V. v. State, Dept. of Institutions, etc.,* 572 P.2d 1283, 1284 (Okla. 1977), overruled in part on other grounds in *A.E. v. State,* 743 P.2d 1041, 1042 (Okla. 1987), we explained that the right of a parent to the companionship, care, custody and management of the parent's child is a "fundamental right protected by the United States Constitution and the Oklahoma Constitution." *See also Matter of Delaney,* 617 P.2d 886, 890 (Okla.1980).

The Oklahoma legislature has met these concerns by providing certain procedural safeguards before parental rights may be judicially terminated. For instance, a parent in a § 1130 termination proceeding under facts similar to ours is statutorily allowed an opportunity to correct the condition by which he or she stands to lose the child before a termination order can become final. 10 O.S.Supp.1993 § 1130(A)(3)(d).

■ It must be understood that a grandparent does not have the same express authority to initiate a private, § 1130 termination action as does a parent or guardian. 10 O.S.Supp.1993 § 1130(C). A grandparent may, of course, prevail upon the District Attorney to so proceed if that is her choice of action and the District Attorney agrees. 10 O.S.Supp.1993 § 1103(B). Or the grandparent may proceed directly on behalf of the child under 10 O.S.1991 § 9. *Lively v. Lively, supra.* But failure to invoke Title 10 does not prevent a district court from exercising its statutory duties involving custody in a divorce action where a grandparent has intervened and the constitutionally protected rights of the parents are honored.

■ To obtain custody in a divorce proceeding, even on a temporary basis as is sought here, over the objection of a parent, a grandparent must show the parents' unfitness by evidence that is clear and conclusive, and makes the necessity for doing so appear imperative. *Gibson v. Dorris,* 386 P.2d at 188. The unfitness may not be demonstrated by a mere comparison between what is offered by the competing parties, *Haralson, supra, Marshall,* 555 P.2d at 599, but only by a showing that the parents cannot reasonably be expected to provide for the child's ordinary comfort or intellectual and moral development. *Gibson v. Dorris, supra* at 188; *Marshall, supra* at 600. Such order must be the product of a hearing of which the parent had notice with the opportunity to be heard. The order must include the conditions found by the trial court to constitute the parental unfitness. This is so that the parent knows what, if corrected, would amount to a change of condition in the eyes of the court.

■ All grandparental custody, absent a final termination order under Title 10, may properly be considered temporary. In *Phillips v. Phillips,* 267 P.2d 597 (Okla.1954) we said:

"Court did not abuse its discretion by placing child of divorced parents in custody

of its maternal grandparents, but upon application for change of custody, court could then consider whether either of child's parents were fit custodians for the child." (Quoted with approval in *State v. Lohah,* 434 P.2d at 931).

During the child's minority the doors of the courthouse will remain open to the parent who would show that the conditions underlying the declaration of unfitness have been corrected. To the extent that *Logan v. Smith* disallows the adjudication of grandparental custody in a divorce proceeding it is disapproved.

 We assume original jurisdiction and issue the writ, but only to require a hearing conforming with this opinion on the issue of the grandmother's motion that the mother is unfit and that custody of the child should be changed pending appeal.

HODGES, C.J., LAVENDER, V.C.J., and OPALA, ALMA WILSON, KAUGER and WATT, JJ., concur.

SIMMS, J., dissents.

HARGRAVE, J., not participating.