2001 OK CIV APP 147

**In the Matter of the GUARDIANSHIP OF H.D.B., a minor child.**

**Donny and Glenda Shadwick, Appellees,**

v.

**Julie Shadwick, Appellant.**

**No. 95,434.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided Sept. 11, 2001.

Certiorari Denied Nov. 6, 2001.

Modified Dec. 18, 2001.

Russell Barber, Barber & Barber, Poteau, OK, For Appellees.

Douglas W. Schmuck, Curtis, Sides & Schmuck, Poteau, OK, For Appellant.

Opinion by KEITH RAPP, Judge:

¶ 1 The trial court respondent, Julie Shadwick (Mother), appeals an order establishing a guardianship for her minor child, H.D.B., and appointment of the trial court petitioners, Donny and Glenda Shadwick (Grandparents), as guardians of the person and estate of H.D.B.

## BACKGROUND

¶ 2 Mother and H.D.B.'s father were separated and the father has had little or no contact with H.D.B.[1] Mother and H.D.B. resided at the residence of Mother's male companion. Mother became pregnant. On the date of delivery, May 21, 2000, she took H.D.B. to her parents, H.D.B.'s Grandparents, for care while she was in the hospital.

¶ 3 Mother has two children from a prior, first marriage. When she and her first husband divorced, he was awarded custody of those children and Mother was awarded supervised visitation with Grandparents providing the supervision. This arrangement had been ongoing since 1998. According to the divorce decree, the condition of the custody-supervised visitation provision was that the arrangement would continue until July 15, 1998, unless Mother could provide a home study demonstrating that she can provide a safe environment free from domestic violence and drug abuse. Such study has not been provided and the supervised visitation provisions remain in place.

¶ 4 When the new baby was born, both the baby and Mother tested positive for drugs. The Department of Human Services (DHS) intervened and took custody of the new baby and placed it with Grandparents. Mother

admitted that she had ingested drugs about three days prior to the birth of the child.

¶ 5 When Mother left the hospital, Grandparents refused to allow her to take H.D.B. They instituted this guardianship proceeding. Testimony at trial revealed that an altercation between Mother and Grandparents occurred after Mother had left the hospital and returned to her home, which resulted in a protective order being issued against Mother. Grandmother also testified about poor sanitary conditions of the home, the presence of weapons there, and an incident when H.D.B. received a broken limb. The water had been turned off for nonpayment for a period of time at the residence but had been restored shortly before the guardianship hearing.

¶ 6 Mother testified that the broken limb was an accident. She offered the medical record about the incident, but the trial court sustained an objection to the offer on hearsay grounds. Her testimony did establish that she obtained medical assistance for H.D.B. when the incident occurred. Mother further testified that she was fit, that she wanted custody of H.D.B., and that the home life she provided was proper. Although she admitted a single use of drugs during her pregnancy, she denied other uses and denied that drugs were present in her residence.

¶ 7 At the close of the evidence, the trial court ruled that appointment of a guardian was in the best interests of H.D.B. The trial court appointed Grandparents as guardians of the person and estate of H.D.B. Mother now appeals.

## STANDARD OF REVIEW

¶ 8 The appellate court has the plenary, independent and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100 n. 1. *Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Keizor v. Sand Springs*

---

1. Father received notice of these proceedings but declined through counsel to participate.

*Ry. Co.,* 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

## ANALYSIS AND REVIEW

### Exclusion of Evidence

■ ¶ 9 Mother argues that the trial court erred in sustaining an objection to the medical report on the ground of hearsay. Mother relies upon the medical history exception. 12 O.S.1991, 2803(4). Mother's offer of evidence does not come within the purview of Section 2803(4). Moreover, the exhibit has not been included in the appellate record and can not be further reviewed to ascertain whether its content qualifies as a hearsay exception.

■ ¶ 10 In all events, error in rulings on evidence do not form the basis for reversal unless a substantial right of the party is affected. 12 O.S.1991, 2104(A). Here, Mother was faced with the suggestion that the broken limb may have happened as a result of abuse inflicted on either Mother or the child and that she was not properly seeking medical care. Mother did testify that the event was accidental and gave her explanation of how it occurred. She also testified about the medical care that was given, including an orthopedist, and that she promptly obtained the care. The fact that the care was rendered was not disputed by Grandparents. The trial court focused upon the drug use problem. Thus, Mother has failed to demonstrate here that any substantial right was affected and no error for failure to consider the offered medical report has been shown.

### Best Interests and Fitness Criteria for Guardianship and Conditions for Termination

■ ¶ 11 Mother's argument here is that before a guardianship for minors can be established the court must find that she, as the parent, is unfit. Moreover, Mother argues that the best interests of the child criterion is either not applicable, or, at most, an additional criterion. She concludes that the court erred because she was not found to be an unfit parent.

¶ 12 The Order Appointing Joint Guardians makes no mention of any findings or basis for the appointment.[2] The appellate record contains a Minute Order which recites that the trial court found that an appointment of guardians "is necessary and convenient and in the best interests of the child."[3] At the close of the evidence the trial court commented upon the drug use. The trial court stated that "there is a need for a guardianship" based upon the evidence from Mother and Grandmother. The trial court concluded that it is in the "best interests" of the child that a guardianship be established.[4] The trial court did not make any affirmative findings that Mother is an unfit parent.

¶ 13 The statute provides:

A. The court of each county, *when it appears necessary or convenient,* may appoint guardians for the persons and estates, or either, or both of them, of minors.

30 O.S.1991, 2–101(A). (Emphasis added.)

¶ 14 The guardianship is terminated when "no longer necessary." 30 O.S.1991, 4–804. The notion of "best interests" enters into the mix when choosing the appropriate person to act as guardian. 30 O.S.1991, 2–103(B); 10 O.S. Supp.2000, 21.1(A).

■ ¶ 15 The question to be addressed then is: What makes appointment of a third party guardian "necessary" over the objection of a parent? This question must be examined in light of the principle that "the custody, care and nurture of the child reside first in the parents." *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944); *McDonald v. Wrigley,* 1994 OK 25, ¶ 9, 870 P.2d 777, 781. This Court holds that whether a guardianship is "necessary" must include an assessment of whether the child's best interests are being fostered. However, because of the preferred role of a parent, specific inquiry and findings must be made regarding the unfitness of the parent before a third party is substituted as

---

2. District Court record at page 9.

3. District Court record at page 8.

4. Trial transcript at pages 66–67.

guardian.[5] A parent's fitness is a component of best interests. The best interests of the child test in Anglo–American legal systems considers a number of factors: (1) the desires of the child; (2) the emotional and physical need of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Yavapai–Apache Tribe v. Mejia,* 906 S.W.2d 152, 168 (Tex.Ct. App.1995). Moreover, in this vein, the Oklahoma Supreme Court, construing 58 O.S. 1971, § 876, now codified as 30 O.S.1991, 4–804, cited above, has ruled that parental fitness and a child's best interests are elements to be established before a minor's guardianship is terminated as no longer being necessary. *In re Guardianship of Hatfield,* 1972 OK 10, ¶ 8, 493 P.2d 819, 821.

¶ 16 This Court perceives no legal purpose to be served by creating different definitions for what is "necessary" when establishing and when terminating a guardianship on "necessary" grounds. Thus, parental unfitness and a child's best interests are mandatory elements which must be shown before a minor is placed in a third-party guardianship over the objection of one or both parents.

¶ 17 In the family law context, "best interests of the child" is the "backbone" of the law. *In re Guardianship of J.O.,* 327 N.J.Super. 304, 743 A.2d 341, 348 (2000). Oklahoma's marriage and family statutes routinely refer to the best interests of the child in divorce matters. 43 O.S. Supp.2000, 107.2, 109, 109.1, 112.

¶ 18 Family law doctrine provides guidance. *In re Guardianship of Nix,* 1996 OK CIV APP 43, ¶ 6, 917 P.2d 491, 492. There,

the Court looked to *McDonald v. Wrigley* for aid in deciding the elements required to terminate a minor's guardianship.

¶ 19 *McDonald* was a divorce action where a grandparent sought custody. The Court held there that the third party in a divorce case had to show the parents' unfitness by clear and convincing evidence, before the third party could obtain custody over an objecting parent. The third party had to show, and the trial court was required to specifically find, that the parents cannot be reasonably expected to provide for the child's ordinary comfort or intellectual and moral development. *McDonald,* 1994 OK 25 at ¶¶ 9, 12, 870 P.2d at 781.

¶ 20 In *Nix,* the Court drew upon *McDonald* in a matter involving an effort to terminate a guardianship as no longer necessary. The *Nix* Court ruled that the parent, who was seeking the termination, had to show *both* that the termination was in the best interests of the child and that she, the parent, was fit. *Nix,* 1996 OK CIV APP at ¶ 5, 917 P.2d at 492.

¶ 21 Further, *In re Guardianship of M.R.S.,* 1998 OK 38, 960 P.2d 357, involved an application by a parent to terminate a child's guardianship. The specific holding of the case is that a parent is not required to meet the test applicable to a modification matter between parents but rather to show that the conditions which resulted in the guardianship have changed and that the parent is now able to take care of the child, that is, fitness. *Id.,* 1998 OK 38 at ¶ 26, 960 P.2d at 364–65. The instructions learned from the outcome and reasoning of *M.R.S.* are:

— Parental unfitness is an element of necessity when a guardianship is established and when it is terminated.

— Best interests of the child are relevant, but the concept of best interests includes parental fitness.

— It is presumed that best interests of the child are with its parents in the absence of clear and convincing proof that the parents are unfit.

---

5. Neither party has argued that the parental fitness element is compelled by the Constitution

and this Court makes no determination on that point.

— Unfitness means that the parents' condition in life, their character and habits, are such that provision for the child's ordinary comfort and contentment or for its intellectual and moral development cannot be reasonably expected.

¶ 22 Next, in cases of parental unfitness, the order appointing the guardian must include the conditions found by the trial court to constitute such unfitness so that the parent can know what changes need to occur. *See McDonald*, 1994 OK 25 at ¶ 12, 870 P.2d at 781. This requirement is implicit from *M.R.S.*, clearly because a parent has to be aware of the conditions leading to the guardianship in order to meet the requirements of proof from *M.R.S.* to terminate the guardianship.

¶ 23 In this case, the Order Appointing Joint Guardians must be reversed and the cause remanded for further proceedings because the trial court did not make affirmative findings of unfitness in accord with the applicable standard of evidence and the applicable definition of unfitness. Moreover, the Order Appointing Joint Guardians and the Minute Order do not specify conditions leading to the guardianship. The Minute Order partially addresses the matter but it is directed to modification of visitation.[6]

■ ¶ 24 In light of the admitted drug abuse involving the new born, this Court will remand the case to the trial court for further proceedings for that court to make a determination of whether Mother is unfit, and if so, that a guardianship is necessary. The trial court shall also specify such conditions of unfitness as it finds to exist and the terms and conditions necessary for Mother to meet in order to terminate the guardianship.[7] However, the trial court's Emergency Temporary Custody Order shall remain in force and effect pending further action by the trial court.[8]

¶ 25 REVERSED AND REMANDED WITH INSTRUCTIONS.

STUBBLEFIELD, P.J., and TAYLOR, J., concur.

---

6. The parties had disagreements about visitation which was a separate issue that was before the trial court and not presented here.

7. Appellate courts do not make first instance determinations of disputed fact issues as that is the trial court's role. *See Davis v. Gwaltney*, 1955 OK 362, ¶ 13, 291 P.2d 820, 824.

8. Also, this Order was not the subject of appellate review.