2007 OK CIV APP 65

**In re the Marriage of Kelly Anne NORROD, Petitioner,**

v.

**Dennis Robert NORROD, Respondent/Appellee,**

and

**Charles M. and Toni Laws, Intervenors/Appellants.**

**No. 103,033.**

Court of Civil Appeals of Oklahoma, Division No. 3.

July 19, 2007.

Certiorari Denied July 3, 2007.

Floyd W. Taylor, Taylor & Associates, Oklahoma City, OK, for Intervenors/Appellants.

William T. Brett, Oklahoma City, OK, for Respondent/Appellee.

## OPINION

ADAMS, Judge.

¶1 Kelly Norrod (Mother) was in a coma as a result of a swimming accident when Appellants Charles and Toni Laws (Grandparents) intervened in the dissolution of marriage proceedings between Mother and Appellee Dennis Norrod (Father), seeking custody of the minor child born during their daughter's marriage. Grandparents appeal the trial court order finding they "failed to meet their burden of proof to show by clear and convincing evidence that [Father] is affirmatively unfit as a parent" and awarding custody of their grandson to Father. Finding the trial court applied the correct burden of proof and that Grandparents have not demonstrated the trial court abused its discretion, we affirm the trial court's judgment.

### Facts

¶2 Father was a non-commissioned officer in the U.S. Army and stationed at Fort Riley, Kansas, when he and Mother were married in 2002. Because Mother had epileptic seizures for which she took several medications, she lived with Grandparents in Oklahoma City, Oklahoma. After T.W.N.'s birth on October 29, 2002, Father's visits with T.W.N. and Mother primarily occurred at Grandparent's home on weekends and holidays, except the summer of 2003 when he took Mother and T.W.N. to Wyoming to meet his family for a two week visit and when Mother and T.W.N. spent three weeks in Kansas prior to his deployment to Iraq.

¶3 The couples' marital issues escalated during Father's service in Iraq. Mother initiated marriage dissolution proceedings on July 30, 2004, but Father was not served summons until his return to the United States in October of 2004. The parties subsequently agreed on Mother having tempo-

rary custody of T.W.N., with Father having visitation rights.

¶ 4 It had been 2½ years since her last seizure, when on May 23, 2005, Mother, a certified lifeguard and water safety instructor, had another one while giving T.W.N. swimming lessons in Grandparents' swimming pool. Grandmother, who had been watching them swim but had left briefly to answer the doorbell, returned to discover both Mother and T.W.N., neither of whom were wearing lifejackets, unconscious in the water. She jumped into the pool, pulled them both out, and was able to resuscitate T.W.N. but not Mother. Within minutes, both T.W.N. and Mother were treated by paramedics and transported by ambulance to the hospital where T.W.N.'s condition stabilized and Mother was comatose and unresponsive.

¶ 5 That same day, Grandfather telephoned Father, who was attending his first day of Drill Sergeant School at Fort Jackson, South Carolina, to tell him about the accident but had to leave a message for him instead. Father learned that same night about the accident and the condition of his son and wife, and the next day he initiated a Red Cross Emergency Leave request. He was released one day later and drove to Oklahoma City, arriving the evening of May 26, 2005, at Mother's sister's home where T.W.N. was staying while Grandparents cared for Mother. After Father and Mother's sister went to the hospital to check on Mother, they argued about the custody of T.W.N.

¶ 6 On May 27, 2005, Father's motion for an emergency hearing on custody was granted by the trial court, whose order awarded Father and Grandparents a rotating visitation schedule and ordered Father "not to remove child from OKC metro area" and "not to smoke around child." On May 31, 2005, Father moved to modify the November 4, 2004 Order, seeking temporary custody of T.W.N. due to Mother's continued comatose status, relief from payment of child support, and an injunction restraining the parties, or their legal representatives, from changing or altering the beneficiary designation of any life insurance policy.

¶ 7 On June 2, 2005, Grandparents filed a Petition in Intervention, alleging Mother and T.W.N. have resided with them since the child's birth, Father had been largely uninvolved in T.W.N's life, T.W.N. had been severely traumatized by the swimming accident and removal would further traumatize him, and that Father is affirmatively unfit as a parent. They also filed a response to Father's motion to modify custody in which they sought to vacate Father's emergency custody order. That same day, a different trial judge reversed the emergency custody order obtained by Father, granted Grandparents permission to intervene, set a rotating visitation schedule for each party, and reinstated the no smoking order.

¶ 8 Mother died on June 5, 2005, without ever regaining consciousness. Through July of 2005, six separate days of hearings were held during which many exhibits were admitted and numerous witnesses testified, including Grandparents, T.W.N.'s maternal aunt and uncle, Mother's friend and a co-worker, Father, his mother, his friend, and his platoon leader while stationed in Iraq.

¶ 9 By order filed January 10, 2006, the trial court denied Grandparents' request for custody, finding that the mother of T.W.N. is deceased, and that, as a matter of law, Father, not having been shown by Grandparents to be affirmatively unfit as a parent by clear and convincing evidence, is entitled to the care, custody, and control of the child. Because T.W.N. had lived with Grandparents since birth and had bonded with them, the trial court found it is in the best interest of T.W.N. to award Grandparents visitation with him. Grandparents' appeal followed.

## Analysis

¶ 10 In their first proposition of error, Grandparents allege the trial court applied the wrong burden of proof in deciding custody between them and Father. This issue calls for resolution of a question of law, the review of which is governed by a *de novo* standard, *i.e.,* an appellate court exercises plenary, independent and nondeferential authority when examining a trial court's legal rulings. *Shorter v. Tulsa Used Equipment*

*and Indus. Engine Services,* 2006 OK 72, 148 P.3d 864.

¶11 Grandparents specifically disagree with the trial court's announcement at the start of trial requiring them to prove by clear and convincing evidence that Father is affirmatively unfit as a parent. They concede this burden of proof was held by the Court in *McDonald v. Wrigley,* 1994 OK 25, 870 P.2d 777, to apply in divorce proceedings when third parties are seeking custody of a child. However, Grandparents argue it is not a hard and fast rule with no exceptions, citing *In re N.L.W,* 2000 OK CIV APP 20, 999 P.2d 448, which they contend holds that custody may be given to grandparents over a *fit* parent's claim to custody *when* the grandparents had cared for the child over an extended period of time with the consent of the parent entitled to custody and *if* the court finds it is in the best interests of the child to do so. They further argue that *McDonald v. Wrigley* is distinguishable because the grandparent seeking custody therein had neither lived with the child nor contributed to the child's care and unbringing, that "this important distinction apparently was given no weight by the trial court," and that *In re N.L.W.* requires application of the "best interest/balancing test" to the facts of this case.

¶12 In the case cited by Grandparents, *In re N.L.W.,* another division of this Court affirmed an order awarding custody to the grandparents of a minor child left in their care for seven years by the mother, whom the trial court had acknowledged was a fit parent. Without mention of *McDonald v. Wrigley,* it cites *Application of Grover,* 1984 OK 20, 681 P.2d 81, and *Bishop v. Benear,* 1928 OK 553, 270 P. 569, the latter as delineating the best interests/balancing test and the former as best reflecting that test's post–1960 viability. We disagree.

¶13 Although noting the *Grover* Court's recognition of prior holdings that the paren-

tal right to care and custody of a child is a fundamental right protected by the federal and state constitutions, the *N.L.W.* Court concluded that the *Grover* Court, who reversed an order awarding custody to the grandparents over a father's objection, did not disapprove of the trial court's balancing analysis, but simply disagreed with its conclusion that the evidence favoring grandparental custody outweighed the fit parent's claim of custody. This interpretation, however, fails to consider that the *Grover* Court, notwithstanding its recognition that 10 O.S. 1981 § 5.1[1] is a reaffirmation of Oklahoma case law holding that the overriding consideration in custody matters is the best interest of the minor child, reversed the trial court, concluding,

> [h]aving determined that the natural father's home is a fit and proper home in which to raise the minor child, *the preference accorded by law to the natural parent to the custody of his or her child determines that the best interest of the child will be served by awarding custody to the natural parent.* 1984 OK 20, ¶18, 681 P.2d at 83. (Emphasis added.)

¶14 Although Grandparents' distinction of the facts in *McDonald v. Wrigley* may be accurate, two of the three cases cited by the Court as authority for the burden of proof at issue actually involved grandparents who had cared for their grandchildren for extended periods. *See Haralson v. Haralson,* 1979 OK 73, 595 P.2d 443 (mother who had custody of children left them in care of maternal grandparents for three years); and *Gibson v. Dorris,* 1963 OK 235, 386 P.2d 186 (the grandmother had taken care of her daughter's two sons since infancy). We are not free to ignore the Supreme Court's holding in *McDonald v. Wrigley,* which clearly involved, as here, third parties seeking custody of a child over a parent's claim and which has been approved by subsequent Supreme Court cases.[2] Based thereon, we conclude

---

1. Section 5.1 provides, as it has since its enactment, effective April 24, 1981:

   The question of custody of a minor child upon the death of the custodial parent shall always be based upon what is in the best interests of the minor child.

2. In an appeal by a father of a six-year old to terminate her guardianship and alleging error with the post-decree change of custody burden of proof placed on him, the Supreme Court in *Matter of Guardianship of M.R.S.,* 1998 OK 38, ¶20–21, 960 P.2d 357, 363, discussed *McDonald v. Wrigley* and its burden of proof for third parties

the trial court applied the correct burden of proof.

¶ 15 Grandparents argue, in their second proposition of error, that under either test, *McDonald v. Wrigley* or *N.L.W.*, the evidence in the case compels reversal of the trial court judgment and award of custody to Grandparents. The awarding of the care and custody of a minor child is within the sound discretion of the trial court, and we will not disturb that judgment on appeal unless it is clearly against the weight of the evidence. *Matter of Adoption of R.W.S.*, 1997 OK 148, 951 P.2d 83. In reviewing the evidence, we must be cognizant of the trial court's superior position for evaluating the credibility of the witnesses. *See Kahre v. Kahre*, 1995 OK 133, 916 P.2d 1355.

¶ 16 To obtain custody in a divorce proceeding over the objection of a parent, a grandparent must show the parent's unfitness by evidence that is clear and conclusive, and makes the necessity for doing so appear imperative. The unfitness may not be demonstrated by a mere comparison between what is offered by the competing parties but only by a showing that the parent cannot reasonably be expected to provide for the child's ordinary comfort or intellectual and moral development. *McDonald v. Wrigley*, 1994 OK 25, ¶ 12, 870 P.2d at 781.

¶ 17 The majority of the evidence Grandparents contend demonstrates Father's unfitness is disputed and/or explained by Fa-

ther,[3] whereas the remainder demonstrates, at least from Grandparents' perspective, how they are better prepared, financially and otherwise, to care for T.W.N. The mere fact that a child might be better cared for by a third person is not sufficient to justify taking a child from its parent. *Haralson v. Haralson*, 1979 OK 73, 595 P.2d 443. On the other hand, Father's evidence demonstrated that he is a well-adjusted and highly respected non-commissioned officer in the military with an exemplary record who was willing to change the direction of his military career in order to care for his child and had taken parenting classes to be a better parent. Based on our review of the entire record, Grandparents have not demonstrated that the trial court's decision concerning custody of T.W.N. is contrary to law or clearly against the weight of the evidence. Father's request for an award of appeal-related attorney's fees and cost pursuant to 20 O.S.2001 § 15.1 is denied.[4]

AFFIRMED

JOPLIN, P.J., and MITCHELL, V.C.J., concur.

---

seeking custody in divorce proceedings, and then stated:

> Recently, in *Matter of Adoption of R.W.S.*, 1997 OK 148, 951 P.2d 83, we cited *Wrigley* with approval. *Our cases make clear that the parent is entitled to custody unless found unfit. The best interests of the child **are presumed** to be with the parents in the absence of clear and convincing evidence to the contrary.* Natural parents will not be deprived of custody simply because another family might be able to provide more amenities and opportunities for the child. (Emphasis added.)

3. For example, Father denied taking any drugs, smoking marijuana, and having a sexual relation-

ship prior to February 2005 with a woman who, since July 2005, was living in his recently-purchased home. He denied that he had ever returned T.W.N. with a dirty diaper and smelling like smoke, testifying that they had never smoked around him or slept with the woman in T.W.N.'s presence. He claimed they went outside to smoke and that he slept on the couch during T.W.N.'s visitations.

4. Although we disagree with *N.L.W.*, we can hardly conclude that Grandparents' reliance on its conclusion was frivolous or without reasonable basis.